**MISCELLANEOUS DRIVERS AND HELPERS LOCAL 610, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–1518.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1979.

Decided March 21, 1979.

Rehearing and Rehearing En Banc Denied April 10, 1979.

Earl B. Wilburn of Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., argued and on brief, for petitioner.

Catherine Garcia, Atty., N. L. R. B., Washington, D. C. (argued), John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel and Paul J. Spielberg, Deputy Asst. Gen. Counsel, Washington, D. C., on brief, for respondent.

Before GIBSON, Chief Judge, ROSS and McMILLIAN, Circuit Judges.

PER CURIAM.

Petitioner union seeks review of an order of the National Labor Relations Board, finding the petitioner committed an unfair labor practice under section 8(b)(1)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(B),[1] and ordering remedial action. The Board cross-applies for enforcement of its order. Jurisdiction in this court lies under section 10(f) of the Act, 29 U.S.C. § 160(f).

The administrative law judge found the following undisputed facts:

---

1. 29 U.S.C. § 158 (1976):
   (b) It shall be an unfair labor practice for a labor organization or its agents—
   (1) to restrain or coerce  * * *  (B) an employer in the selection of his representa-

tives for the purposes of collective bargaining or the adjustment of grievances;

\*　\*　\*　\*　\*　\*

From December 1974 to September 1977, the charging party, Ronald Fisher, worked as a departmental foreman at Bianco Manufacturing Company, a division of Falcon Products, Inc. During this time, Bianco and the union were parties to a collective bargaining agreement.

On September 1, 1977, Fisher lunched with several Bianco employees who were union members, including Leonard Witt, a union steward. During an argument Witt stated, "You damn company guys think you can run the whole show." Fisher replied, "[Y]ou're paying a man to drive around in a new car and wearing expensive clothes, suits, and you're buzzing your tail for four or five bucks, now, you tell me who the dummy is, you or me; as far as I'm concerned, Leonard, all unions are crooks and thieves."

After lunch the union's president, John Metz, and two union business agents informed Bianco Vice President Joseph Horvath that one of his foremen had called Metz a crook. Horvath summoned Fisher, union steward Witt, and Fisher's immediate superior, James Kite.

In the discussion that followed, a heated argument developed. Fisher again stated his opinion of "unions in general," and Metz took Fisher's statement as a personal insult. Metz said to Horvath that as long as people like Fisher were around, the company would have problems with the union, especially during the upcoming contract negotiations in December.

The next morning, Horvath telephoned Metz, and each apologized. Metz told Horvath that the company and the union had worked together well over the past three years, and said, "[W]e won't let anything * * * happen to that, what we've built in the last three years, over a personal problem." Within half an hour of that conversation, Horvath told Kite to fire Fisher, and Kite carried out this instruction.

In addition to these undisputed facts, the administrative law judge made the following findings:

(1) that during the afternoon meeting on September 1, 1977 "Metz did in fact tell Horvath that he had to get rid of Fisher to avoid future trouble with the Union, particularly during contract negotiations";

(2) that Horvath's telephone call to Metz on the morning of September 2 was motivated by a "pressing concern that Metz' attitude toward the Company had hardened and conciliatory efforts were necessary";

(3) that nothing Metz said during this conversation "specifically [or] impliedly retracted the request to get rid of Fisher," and that Metz' reference to a "personal problem" indicated to Horvath that "Metz' dissatisfaction with and hostility to Fisher continued";

(4) that Horvath had not "even considered firing Fisher until he talked to Metz"; and

(5) that "the discharge of Fisher was another conciliatory action directed by Horvath in order to placate Metz and remove the source of Metz' displeasure in order that the Employer would not experience further problems with the Respondent in negotiations or otherwise."

The judge concluded that Fisher was a "representative" of Bianco "for the purpose of * * * the adjustment of grievances" within the meaning of section 8(b)(1)(B) and that the union committed an unfair labor practice under section 8(b)(1)(B) by demanding Fisher's discharge and conditioning trouble-free collective bargaining upon his dismissal. The Board affirmed and adopted the judge's recommended order.

Section 10(f) of the National Labor Relations Act provides that upon review by a court of appeals, "the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall * * * be conclusive." 29 U.S.C. § 160(f) (1976). We hold that the findings of the Board are supported by substantial evidence on the record considered as a whole. The petition to set aside the Board's findings is therefore denied, and the Board's petition for enforcement is granted.